BAKER, Judge
(dissenting):
While the unlawful command influence in this ease was manifest, this is a close case on prejudice. One reason the prejudice call is a close one is because the manner in which the unlawful command influence issue was litigated does not fit neatly into the United States v. Biagase, 50 M.J. 143, 151 (C.A.A.F.1999), framework. Specifically, under Biagase once unlawful command influence is found, the burden shifts to the government to disprove prejudice beyond a reasonable doubt. Id. However, the Biagase line of eases is addressed to instances of unlawful command influence identified after trial. This issue arose before trial. Moreover, the Biagase line did not contemplate nor address the circumstance where, as here, the defense expressed satisfaction with the remedial measures adopted by the military judge, in which context; the military judge did not require more from the government.
As a result, in this case there are arguments on both sides of the ledger. On the one hand, this is clearly a case where the chilling hand of unlawful command influence initially limited Appellant’s opportunity to solicit favorable testimony. Because the Government bears the burden of proving beyond a reasonable doubt that the unlawful command influence was not prejudicial, it is placed in the position in this ease of having to demonstrate a negative, that Master Sergeant (MSgt) Bialcak’s orders and actions did not continue to keep people from testifying after the remedy was put in place. However, that is hard to do; to resort to one of the metaphors that seem to cling to unlawful command influence issues, one cannot un-ring a bell. Perhaps, one of those putative witnesses would have vouched for Appellant’s credibility or qualities as a member of the military.
On the other hand, neither the military judge nor the defense counsel put the Government to the test. Defense counsel affirmed that the remedy had been implemented and, when given the opportunity to object or voice any concerns or raise additional motions, responded, “Nothing at this time.” Moreover, there is no evidence that Appellant was prejudiced in a military judge alone trial where the military judge understood what the putative witnesses might have said, where the military judge instituted a reasonable remedy, and where defense counsel expressed satisfaction with the result.
Weighing these two sides of the equation I would reach a different result than the majority in this case, therefore, I respectfully dissent. As importantly, I disagree with the analytic structure and reasoning the majority adopts.
First, the majority embraces the dated unlawful command influence metaphor that the military judge is the last sentinel against unlawful command influence, but then relieves that sentinel of her duties. “The military judge, having crafted a reasonable rem *358 edy, is not required, in the face of apparent satisfaction from the defense, to intuit possible objections for the defense and then raise them sua sponte.” United States v. Douglas, 68 M.J. at 355 (C.A.A.F.2010). In my view, whatever metaphor we adopt, and it might be time to simply refer to the military judge as a military judge and not a sentinel, it is and remains the military judge’s responsibility to address unlawful command influence at trial from start to finish, regardless of what the parties say.
Second, the majority concludes that the military judge’s remedial actions were reasonable. Id. at 355. The majority also notes that the defense was given the opportunity to express concerns about the application of those remedies and did not. Id. That acquiescence is not waiver, but it is a factor the military judge reasonably considered in proceeding with sentencing. Specifically, in the context of this case, in a military judge alone trial, the military judge did not require the Government to do something more to demonstrate a lack of unlawful command influence prejudice. Although in retrospect, we now know it would have been better if the military judge had expressly determined that all the remedial measures had been implemented, I do not think the Singase framework requires, or should require, the Government to nonetheless prove a negative in the context where the defense expressed satisfaction, the military judge did not require more, and the military judge, sitting alone, had command of the facts that might be relevant to a good soldier case.
Third, in any event, the majority cites United States v. Gleason, 43 M.J. 69, 74-75 (C.A.A.F.1995), for the proposition that the government has three means by which it can demonstrate a lack of prejudice in a character witness case. Douglas, 68 M.J. at 356. Aside from the fact that Gleason does not provide or compel a checklist approach to prejudice, I would leave the appropriate means of demonstrating a lack of prejudice to the context of the individual case presented and the discretion of the military judge presiding. This is especially apt where the unlawful command influence is identified before trial and addressed, as opposed to the circumstances in Gleason and United States v. Thomas, 22 M.J. 388 (C.M.A.1986), where it was identified after trial.
Military judges, counsel, and indeed all participants in the military justice system have a duty to remain vigilant to the risk of unlawful command influence on military justice. In this sense, the metaphor of the “mortal enemy” is still apt. If allowed in practice, unlawful command influence will have a corroding effect that could prove deadly to the confidence members of the Armed Forces and the public have in the military justice system. However, it is also fair to acknowledge that the system has matured and evolved since Thomas. Thus, the metaphor remains less apt to the extent it conveys the sense that there is an enemy afoot — a mortal enemy — which one might expect to contest the system at every turn, like Cold War enemies or Carthage and Rome. In this sense, the metaphor may suggest too much, in the way of a breathless presence, or omnipresence. In that regard, one might better look to child pornography or processing delay in the military justice system as “mortal enemies.” However one describes unlawful command influence, in this case the problem was identified, reasonable remedial steps were taken, and both the military judge and defense counsel were satisfied with those steps before the military judge alone trial proceeded further. As a result, I would find that there was no prejudice in this case and affirm the United States Air Force Court of Criminal Appeals decision.